# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| MARLON L. WATFORD, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| vs. | ) Case No. 18−cv−1313−MJR |
| | ) |
| HARNER, | ) |
| WINTERS, | ) |
| KERNS, | ) |
| OPOKA, | ) |
| VAN DECKERHOFF, | ) |
| HOLT, | ) |
| HARRINGTON, | ) |
| BUTLER, | ) |
| LASHBROOK, | ) |
| ROSE, | ) |
| SEALS, | ) |
| THEO, | ) |
| LLOYD HANNA, | ) |
| JOHN DOE 1, and | ) |
| JAN DOE | ) |
| | ) |
| Defendants. | ) |

## MEMORANDUM AND ORDER

**REAGAN, Chief District Judge:**

Plaintiff Marlon L. Watford, an inmate in Menard Correctional Center, brings this action for deprivations of his constitutional rights pursuant to 42 U.S.C. § 1983. Plaintiff seeks injunctive relief, compensatory damages, and punitive damages. This case is now before the Court for a preliminary review of the Complaint pursuant to 28 U.S.C. § 1915A, which provides:

> (a) **Screening** – The court shall review, before docketing, if feasible or, in any event, as soon as practicable after docketing, a complaint in a civil action in which a prisoner seeks redress from a governmental entity or officer or employee of a governmental entity.

1

> (b) **Grounds for Dismissal** – On review, the court shall identify cognizable claims or dismiss the complaint, or any portion of the complaint, if the complaint–
> (1) is frivolous, malicious, or fails to state a claim on which relief may be granted; or
> (2) seeks monetary relief from a defendant who is immune from such relief.

An action or claim is frivolous if "it lacks an arguable basis either in law or in fact." *Neitzke v. Williams*, 490 U.S. 319, 325 (1989). Frivolousness is an objective standard that refers to a claim that any reasonable person would find meritless. *Lee v. Clinton,* 209 F.3d 1025, 1026-27 (7th Cir. 2000). An action fails to state a claim upon which relief can be granted if it does not plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007). The claim of entitlement to relief must cross "the line between possibility and plausibility." *Id*. at 557. At this juncture, the factual allegations of the *pro se* complaint are to be liberally construed. *See Rodriguez v. Plymouth Ambulance Serv.*, 577 F.3d 816, 821 (7th Cir. 2009).

Upon careful review of the Complaint and any supporting exhibits, the Court finds it appropriate to exercise its authority under § 1915A; portions of this action are subject to summary dismissal.

## The Complaint

Plaintiff is a sincere and devout Muslim and follows the tenants of Al-Islam. (Doc. 1, p. 2). It is a tenant of his faith to perform a fast during the holy month of Ramadhan and to complete the fast with the Id-ul-Fitr (feast). (Doc. 1, pp. 2-3). Since 2002 (when Plaintiff was first incarcerated at Menard), prison officials have provided Christian inmates with a feast at Christmas, but Plaintiff has not been given a feast to celebrate Id-ul-Fitr in accordance with his religious beliefs. (Doc. 1, pp. 4-6). Plaintiff has been deprived of the Il-ul-Fitr feast on July 28,

2014, July 18, 2015, July 6, 2016, and June 25, 2017 by Defendants Harner, Winters, Kern, Opoka, Van Deckerhoff, Holt, Theo, Harrington, Butler, and Lashbrook. (Doc. 1, p. 6). Plaintiff alleges that this conduct impedes his religious expression. (Doc. 1, p. 7).

It is normal practice at Menard to provide Muslim inmates with sahur (pre-dawn) and iftar (sunset) meal trays during the month of Ramadhan in order to fast. (Doc. 1, p. 14). Plaintiff was approved to be added to the institutional fasting list for Muslims who wanted to participate in Ramadhan on April 15, 2017. *Id*. Despite being approved, Plaintiff was deprived of his fasting meal trays from June 1, 2017 through June 24, 2017 by Harner, Theo, Winters, Van Deckerhoff, Lashbrook, Rose, Seals and John Doe. (Doc. 1, pp. 15-20). Similarly situated Muslim inmates and Christian inmates were not deprived of their religious special diet trays. (Doc. 1, pp. 18-19).

Another tenant of Plaintiff's faith is that he must not eat of meats of which Allah's name has not been pronounced because that would be impiety. (Doc. 1, pp. 23-24). In order to meet this requirement, Plaintiff was approved for the Lacto-Ovo-Veg religious diet tray on October 22, 2007. (Doc. 1, p. 25). Plaintiff alleges that the IDOC master menu calls for the Lacto-Ovo-Veg religious diet tray to be provided with 2 packs of peanut butter as a protein substitute with hot cereal or cold/dry cereal with bread, jelly, and butter for the Wednesday breakfast. (Doc. 1, pp. 25-26). Starting on March 22, 2017 and on an ongoing basis, Holt and Van Deckerhoff have been putting meat on Plaintiff's religious diet tray in the form of a breakfast sausage in gravy while other religious diet trays continue to receive the peanut butter and cereal option. (Doc. 1, pp. 26-27). Plaintiff alleges this diet denies him adequate nutrition. (Doc. 1, p. 26). Plaintiff wrote to Lashbrook 4 times between March 22, 2017 through April 12, 2017 complaining about the situation, but she failed to respond. (Doc. 1, p. 27).

Plaintiff also alleges that the IDOC master menu calls for a cold salad tray for the majority of the lunch and dinner meals during the week for the Lacto-Ovo-Veg diet, as well as other religious diets. (Doc. 1, pp. 27-28). Beginning March 20, 2017 and on an ongoing basis afterwards, Theo has been depriving Plaintiff of his cold salad trays, despite the fact that other inmates on religious diets continue to receive them. (Doc. 1, p. 28). On December 8, 2017 and on an ongoing basis thereafter, Hanna, Winters, Kerns, Opoka, Van Deckerhoff, Holt, Theo, Jan Doe, and Lashbrook have been substituting apples for bananas on Plaintiff's food tray. (Doc. 1, p. 40). Plaintiff wrote to Lashbrook 4 times between March 22, 2017 through April 12, 2017 advising her of this problem, but she never responded. (Doc. 1, p. 29).

The Dietary Department at Menard used to use a computer-generated adhesive sticker system that included information like the inmate's name, prison I.D. number, cell location, and the type of diet required. (Doc. 1, p. 36). The IDOC master menu calls for the Lacto-Ovo-Veg religious diet tray to serve eggs and cheese for breakfast on Tuesdays and Thursdays, and whenever the "country breakfast" dinner meal is served. (Doc. 1, p. 37). In late 2015, the Dietary Department abandoned the computer-generated sticker system in favor of handwritten notes, which are subject to human error. (Doc. 1, p. 38). On December 8, 2017 and on an ongoing basis afterwards, Jan Doe and Theo have provided Plaintiff with a vegan diet tray instead of his Lacto-Ovo-Veg diet tray due to mislabeling, which prevents him from getting eggs and cheese. (Doc. 1, pp. 38-39). Plaintiff alleges this infringes on his religious duties to provide himself with a balanced diet and to be free from oppression. (Doc. 1, p. 39). Plaintiff informed Lashbrook in writing about the mistake, but she did not respond. (Doc. pp. 39-40).

## **Discussion**

Based on the allegations of the Complaint, the Court finds it convenient to divide the pro se action into 4 counts. The parties and the Court will use these designations in all future pleadings and orders, unless otherwise directed by a judicial officer of this Court. The following claims survive threshold review:

> **Count 1** – Harner, Winters, Kerns, Opoka, Theo, Van Deckerhoff, Harrington, Butler, and Lashbrook have deprived Plaintiff of the Id-ul-Fitr feast, while providing meals to celebrate Christian feasts, burdening his sincerely held religious beliefs in violation of the First Amendment, Fourteenth Amendment, and/or RLUIPA;
>
> **Count 2** – Harner, Theo, Winters, Van Deckerhoff, Lashbrook, Rose, Seals, and John Doe deprived Plaintiff of the opportunity to participate in the Ramadhan fast between June 1, 2017 through June 24, 2017, while not treating other similarly situated inmates in the same manner, in violation of the First Amendment, Fourteenth Amendment, and /or RLUIPA;
>
> **Count 3** – Hanna, Winters, Kerns, Opoka, Holt, Van Deckerhoff, Theo, Jan Doe, and Lashbrook have substantially burdened Plaintiff's practice of his religion by making substitutions to his food tray in violation of the First Amendment, Fourteenth Amendment, and/or RLUIPA.

Plaintiff has also attempted to bring another Count, but for the reasons elucidated below, this claim does not survive threshold review.

> **Count 4** – Hanna, Winters, Kerns, Opoka, Van Deckerhoff, Holt, Theo, Jan Doe, and Lashbrook have substantially burdened Plaintiff's practice of his religion by erroneously giving him a vegan tray when he is approved for a Lacto-Ovo-Veg. diet tray in violation of the First Amendment, Fourteenth Amendment and/or RLUIPA.

As to **Counts 1-3**, prison officials may act to limit the expression of sincere religious belief if the restriction is justified by a legitimate penological interest. *Conyers v. Abitz*, 416 F.3d 580, 585 (7th Cir. 2005); *Childs v. Duckworth*, 705 F.2d 915, 920 (7th Cir. 1983). Legitimate penological interests include the preservation of security in prison, as well as economic concerns. *See Ortiz v. Downey*, 561 F.3d 664, 669 (7th Cir. 2009). When these

concerns are raised as justifications by prison officials for their actions that restrict the practice of religion, the Court looks at four factors to determine whether the restriction is constitutional:

> (1) whether the restriction "is rationally related to a legitimate and neutral governmental objective"; (2) "whether there are alternative means of exercising the right that remain open to the inmate"; (3) "what impact an accommodation of the asserted right will have on guards and other inmates"; and (4) "whether there are obvious alternatives to the [restriction] that show that it is an exaggerated response to [penological] concerns."

*Id.* (citing *Lindell v. Frank*, 377 F.3d 655, 657 (7th Cir. 2004)).

The Fourteenth Amendment Equal Protection clause prohibits discrimination and requires the evenhanded treatment of all religions:

> In providing [inmates the] opportunity [to practice their religion], the efforts of prison administrators, when assessed in their totality, must be evenhanded. Prisons cannot discriminate against a particular religion. The rights of inmates belonging to minority or non-traditional religions must be respected to the same degree as the rights of those belonging to larger and more traditional denominations. Of course, economic and, at times, security constraints may require that the needs of inmates adhering to one faith be accommodated differently from those adhering to another. Nevertheless, the treatment of all inmates must be qualitatively comparable.

*Al–Alamin v. Gramley,* 926 F.2d 680, 686 (7th Cir. 1991) (citations omitted).

**Counts 1-2** state constitutional claims under the First and Fourteenth Amendments. Plaintiff has alleged that he was not permitted to have the annual religious feasts required by his religion, and that he was prevented from participating in a mandatory fast during 2017. He has further alleged that Islam is being treated differently than more mainstream religions like Christianity, whose practitioners are permitted to celebrate the Christmas feast. These allegations state a claim under the First and/or Fourteenth Amendments, and they will be allowed to proceed in this litigation.

It is a closer call whether **Count 3** states a claim. Plaintiff has alleged that prison officials make substitutions to his meal tray. In one instance, he has alleged that his cereal/peanut butter breakfast is replaced with sausage. It is plausible that the sausage contains pork, and thus burdens Plaintiff's religious practice. But it is less clear that the substitution of apples for bananas or the denial of salad is in any way religiously significant. Still, Plaintiff has pleaded that it is, and the bar for establishing that a given practice substantially burdens an adherent's practice is a low one. *See Nelson v. Miller*, 570 F.3d 868, 878 (7th Cir. 2009) (discussing the centrality of the adherent's belief to the determination of whether his religious practice has been burdened). For that reason **Count 3** will also survive threshold review under the First and Fourteenth Amendments.

RLUIPA applies to state and local governments and to those acting under color of state law. *See* 42 U.S.C. § 2000cc–5(4). It offers broad protection to institutionalized persons by prohibiting substantial burdens on their religious exercise. § 2000cc–3(g). This protection extends to "any exercise of religion, whether or not compelled by, or central to, a system of religious belief." § 2000cc–5(7)(A). However, RLUIPA does not provide a cause of action for money damages against officials in their individual capacity, *see Nelson v. Miller,* 570 F.3d 868, 886–89 (7th Cir. 2009), or official capacity, *see Sossamon v. Texas,* 563 U.S. 277, 280 (2011). Therefore, Plaintiff may not pursue a claim for money damages against any Defendant under RLUIPA. Instead, the Court will allow him to proceed with a request for injunctive relief against Defendant Lashbrook in her official capacity as Warden of Menard. To the extent that Plaintiff has attempted to state an official capacity claim against anyone other than Lashbrook, those claims are dismissed.

**Count 4** states no claim and will be dismissed without prejudice at this time. Plaintiff has alleged that the prison's practice of relying on dietary workers to label trays, in lieu of a computer system causes errors, specifically the replacement of his Lacto-Ovo-Veg diet with a vegan tray. Plaintiff has not alleged that the Muslim religion prohibits a vegan diet or that any of the food on those trays is forbidden by his religion. He has alleged that it violates his religious tenants because 1) his religion requires him to consume a balanced diet and 2) he is required to be free from oppression. But Plaintiff has not alleged that the vegan tray provides inadequate nutrition; presumably some prisoners are eating exclusively vegan trays. Additionally, the Court cannot see how acts of negligence can be said to be oppressive. Plaintiff is not alleging that any defendant is specifically targeting him or intending to oppress him. He has alleged that they have adopted an inferior system after using a superior system. On these facts, it is not plausible that any defendant acted to impermissibly burden Plaintiff's practice of religion. Therefore **Count 4** will be dismissed without prejudice.

## Disposition

**IT IS HEREBY ORDERED** that **Counts 1-3** survive threshold review. **Count 4** will be dismissed without prejudice for failure to state a claim. Plaintiff has requested an "emergency temporary injunctive order," which the Court construes as a Motion for a Preliminary Injunction. The Clerk of Court is **DIRECTED** to docket a motion for a preliminary injunction, and it is referred to the Magistrate Judge assigned to this case for prompt disposition.

**IT IS ORDERED** that the Clerk of Court shall prepare for Defendants Harner, Winters, Kerns, Opoka, Van Deckerhoff, Holt, Harrington, Butler, Lashbrook, Rose, Seals, Theo, and Hanna: (1) Form 5 (Notice of a Lawsuit and Request to Waive Service of a Summons), and (2) Form 6 (Waiver of Service of Summons). The Clerk is **DIRECTED** to mail these forms, a copy

of the complaint, and this Memorandum and Order to each Defendant's place of employment as identified by Plaintiff. If a Defendant fails to sign and return the Waiver of Service of Summons (Form 6) to the Clerk within 30 days from the date the forms were sent, the Clerk shall take appropriate steps to effect formal service on that Defendant, and the Court will require that Defendant to pay the full costs of formal service, to the extent authorized by the Federal Rules of Civil Procedure.

Service shall not be made on the Unknown (John/Jan Doe) Defendants until such time as Plaintiff has identified them by name in a properly filed amended complaint. Plaintiff is **ADVISED** that it is Plaintiff's responsibility to provide the Court with the names and service addresses for these individuals.

**IT IS FURTHER ORDERED** that, with respect to a Defendant who no longer can be found at the work address provided by Plaintiff, the employer shall furnish the Clerk with the Defendant's current work address, or, if not known, the Defendant's last-known address. This information shall be used only for sending the forms as directed above or for formally effecting service. Any documentation of the address shall be retained only by the Clerk. Address information shall not be maintained in the court file or disclosed by the Clerk.

Defendants are **ORDERED** to timely file an appropriate responsive pleading to the complaint and shall not waive filing a reply pursuant to 42 U.S.C. § 1997e(g).

Pursuant to Local Rule 72.1(a)(2), this action is **REFERRED** to United States Magistrate Judge Stephen C. Williams for further pre-trial proceedings.

Further, this entire matter is **REFERRED** to United States Magistrate Judge Stephen C. Williams for disposition, as contemplated by Local Rule 72.2(b)(3) and 28 U.S.C. § 636(c), *should all the parties consent to such a referral.*

9

**IT IS FURTHER ORDERED** that if judgment is rendered against Plaintiff, and the judgment includes the payment of costs under Section 1915, Plaintiff will be required to pay the full amount of the costs, notwithstanding that his application to proceed *in forma pauperis* has been granted. *See* 28 U.S.C. § 1915(f)(2)(A).

Plaintiff is **ADVISED** that at the time application was made under 28 U.S.C. § 1915 for leave to commence this civil action without being required to prepay fees and costs or give security for the same, the applicant and his or her attorney were deemed to have entered into a stipulation that the recovery, if any, secured in the action shall be paid to the Clerk of the Court, who shall pay therefrom all unpaid costs taxed against plaintiff and remit the balance to plaintiff. Local Rule 3.1(c)(1)

Finally, Plaintiff is **ADVISED** that he is under a continuing obligation to keep the Clerk of Court and each opposing party informed of any change in his address; the Court will not independently investigate his whereabouts. This shall be done in writing and not later than **7 days** after a transfer or other change in address occurs. Failure to comply with this order will cause a delay in the transmission of court documents and may result in dismissal of this action for want of prosecution. *See* Fed. R. Civ. P. 41(b).

**IT IS SO ORDERED.**
**DATED: July 16, 2018**

s/ MICHAEL J. REAGAN
**U.S. Chief District Judge**
