IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| MARLON L. WATFORD, | ) | |
|---|---|---|
| Plaintiff, | ) | |
| vs. | ) | |
| CHAPLAIN HARNER, | ) | |
| WINTERS, | ) | |
| KERNS, | ) | |
| OPOKA, | ) | |
| VAN DECKERHOFF, | ) | |
| HOLT, | ) | |
| WARDEN HARRINGTON, | ) | Case No. 18-cv-1313-MJR-MAB |
| BUTLER, | ) | |
| LASHBROOK, | ) | |
| SGT. ROSE, | ) | |
| OFFICER SEALS, | ) | |
| THEO, LLOYD HANNA, | ) | |
| JANE DOE, | ) | |
| SGT. DELRE, | ) | |
| Defendants. | ) | |

**MEMORANDUM & ORDER**

**REAGAN, Chief Judge:**

I. Introduction

Now before the Court is Magistrate Judge Gilbert C. Sison's Report and Recommendation (R&R) on Plaintiff's Motion for a Preliminary Injunction (Docs. 6, 42).

The underlying suit is a civil rights complaint by inmate Marlon L. Watford against various individuals at Menard Correctional Center ("Menard") concerning alleged violations of his ability to practice his religion, including improper dietary offerings (Doc. 1). Because the original complaint contained requests for injunctive relief, a motion for preliminary injunction was docketed when this matter was opened (Doc. 6). Magistrate Judge Sison prepared an R&R addressing injunctive relief and gave the parties 14 days to object (Doc. 42). Watford filed a timely objection, so the matter is now ripe for the undersigned's consideration (Doc. 43).

## II. Facts

In the Complaint, Watford alleges that Christians get a Christmas meal, but in 2014, 2015, 2016, and 2017 he was deprived of a similar feast meal for his practice of Islam (Doc. 1 at 1-7). As a result, Watford has been restricted from practicing his religion and he has suffered physical consequences such as aggravated scar tissue, inflamed bowels, and emotional and mental distress (*Id.* at 8). He requests a mandatory injunction, requiring Menard to give Al-Islam Muslim inmates an Id-ul-Fitr (Feast) Meal (*Id.* at 9). Plaintiff alleges that he became eligible to receive Ramadhan Fast meals on April 15, 2017, but that he was deprived of those trays from June 1, 2017 to June 24, 2017, of the holy month, and the Id-ul-Fitr feast on June 25, 2017 (*Id.* at 14-15). Watford alleges that the problems in 2017 caused him the same harms as alleged above, and he seeks the same mandatory injunction that he be provided adequate dietary trays (*Id.* at 20-21).

He alleges that a major tenant of his faith is proper nourishment of his body (*Id.* at 24). As part of proper nourishment, Watford states that Lacto-Ovo-Veg meal trays should contain two packets of peanut butter as a protein substitute (*Id.* at 25-26). From March 22, 2017, onwards, he alleges his trays have had unlawful meat and gravy, rather than the two packets of peanut butter (*Id.* at 26-27). He also alleges that from March 20, 2017, he was the only inmate at Menard not receiving a salad (*Id.* at 28-29). The meat, peanut butter, and salad issues cause the same harms as other dietary gripes, and plaintiff seeks a mandatory injunction to remedy the same (*Id.* at 31-33). Watford also contends that as injunctive relief he should get a fresh banana once a week (*Id.* at 44-45).

Watford summarizes his request for injunctive relief as one for:

> 1) an emergency temporary injunctive order directing the Defendants Food Supervisor Van Deckerhoof to provide the Plaintiff with two packs of peanut butter and four packs of jelly and hot cereal and/or dry/cold cereal on his Wednesday breakfast meal Lacto-Ovo-Veg religious diet tray; […] 4) an injunctive order directing the Defendants to provide the Plaintiff with his: A) correct religious diet tray by returning to the computer generated adhesive identification sticker bearing the Plaintiff's last name, prison I.D. number, cell location, and Lacto-Ovo-Veg info—and to provide him with scramble eggs on his said tray for the Tuesday breakfast meal, hard boiled eggs on said tray for the Thursday breakfast meal, scramble eggs on his said tray for particular Monday and Friday "country breakfast" meals Dinner meals; B) a cold salad tray (viz: salad, shredded cheese, crackers, salad dressings, fruit/dessert); C) bananas once a week and stop feeding him nothing but apples; D) two packs of peanut butter and four packs of jelly and hot cereal and/or dry/cold cereal; E) to receive his holy month of Ramadhan fast trays (viz: sqhur meal and iftar meal); and F) to receive his Id-ul-Fitr (Feast) meal tray consisting of: i) halal chicken, fish, rice, sweet potatoes, green beans, salad with salad dressing, bananas, bean pie/pumpkin pie, and a cold beverage

(*Id.* at 50-51). His complaint also has many exhibits in the form of grievances and other institutional documentation appended to it (Doc. 1-1 at 1-75).

On January 24, 2019, he moved to amend or correct his request for injunctive relief by a ten-page document (Doc. 38). In addition to his prior complaints about dietary offerings, Plaintiff submits that in fall or winter of 2018 he was diagnosed with an iron deficiency during a pre-operative work-up (*Id.* at 3). Doctor's notes appended to his supplement reflect an iron deficiency, and also note that he was given a supplement (*Id.* at 5). Watford contends that the iron deficiency and severe weight loss are a result of not getting the appropriate meal tray for breakfast on Wednesdays (*Id.* at 1-4, 7-9). He does not repeat any of his prior requests for injunctive relief.

Magistrate Judge Sison prepared an R&R without holding an evidentiary hearing or gathering additional evidence about the request for injunctive relief. He concluded that injunctive relief was not appropriate because Plaintiff has not shown a likelihood of success on the merits, nor has he shown irreparable harm (Doc. 42 at 7). Magistrate Judge Sison characterizes "the clear import of Plaintiff's request [as] thus aimed at obtaining adequate nutrition, which falls outside the protections of RLUIPA" (*Id.* at 7). The R&R also concludes that there is no showing of irreparable harm because it is not clear how a shortage of peanut butter and jelly constitute nutritional inadequacy, and even if such a shortcoming is

uncomfortable, even missing a meal in prison does not rise to the level of a constitutional deprivation (*Id.* at 7-8). As a final matter, the R&R notes that Plaintiff is receiving an iron supplement, thus his nutritional problems are being addressed (*Id.* at 9). Thus, Magistrate Judge Sison concludes that Watford is not eligible for injunctive relief (*Id.*).

In his timely objection, Watford contends that his dietary requests for two packets of peanut butter and four of jelly are essential to his religion because it is a tenant of his religion that he must adequately nourish his body (Doc. 43 at 3-4). In an attempt to clarify why a single packet of peanut butter is not enough, Watford notes that the dietary menu says one pack, which should equal one ounce, but that the packs Menard serves are only half an ounce (*Id.* at 4). He seems to allege that he is the only inmate who gets meat on his Lacto-Ovo-Veg tray, while other religious inmates get compliant trays (*Id.* at 5-6). Watford contends that directing Menard to comply with dietary restrictions presented on their own menu would be a minimally intrusive means to remedy this problem for the time being (*Id.* at 8-9). Further, Watford supplies that inadequate nutrition interferes with his religion because he is too tired to pray, or study religious materials (*Id.* at 9). His final contention is that Magistrate Judge Sison confused the legal standards about nutrition, with those about the observance of religion, and thus, he reached the wrong conclusion for the wrong reasons (*Id.* at 10-11). Watford appended copies of the Vegan Master Diet menu to his objection (*Id.* at 14-18).

### III. Applicable Law

Timely objections having been filed, the Court undertakes *de novo* review of the portions to the Report to which Plaintiff specifically objected. **28 U.S.C. § 636(b)(1); FED. R. CIV. P. 72(b); SDIL-LR 73.1(b).** The undersigned can accept, reject, or modify Magistrate Judge Sison's recommendations, receive further evidence, or recommit the matter with instructions. *Id.* As the review of the motion for preliminary injunction is *de novo*, the Court conducts an "independent review of the evidence and arguments without giving any presumptive weight to the magistrate judge's conclusion," and "is free, and encouraged, to consider all of the available information about the case when making this independent decision." *Mendez v. Republic Bank*, **725 F.3d 651, 661 (7th Cir. 2013).**

A preliminary injunction is "an extraordinary and drastic remedy, one that should not be granted unless the movant, by a clear showing, carries the burden of persuasion." *Mazurek v. Armstrong,* **520 U.S. 968, 972 (1997) (emphasis in original).** *Accord Winter v. Natural Res. Def. Council, Inc.*, **555 U.S. 7, 24 (2008) ("A preliminary injunction is an extraordinary remedy never awarded as of right") (citation omitted).** To secure a preliminary injunction, the movant must show (1) that he is likely to succeed on the merits, (2) that he is likely to suffer irreparable harm without the injunction, (3) that the harm he would suffer is greater than the harm a preliminary injunction would inflict on defendants, and (4) that the injunction is in the public interest. *Judge v. Quinn*, **612 F.3d 537, 546 (7th Cir. 2010) (citing *Winter*, 555 U.S. at 20).** The "considerations are

interdependent: the greater the likelihood of success on the merits, the less net harm the injunction must prevent in order for preliminary relief to be warranted." *Judge*, **612 F.3d at 546. (citation omitted).**

In the context of prisoner litigation, there are further restrictions on the Court's remedial power. The scope of the court's authority to enter an injunction in the corrections context is circumscribed by the Prison Litigation Reform Act (PLRA). *Westefer v. Neal*, **682 F.3d 679, 683 (7th Cir. 2012)**. Under the PLRA, preliminary injunction relief "must be narrowly drawn, extend no further than necessary to correct the harm the court finds requires preliminary relief, and be the least intrusive means necessary to correct that harm." **18 U.S.C. § 3626(a)(2).** *See also Westefer*, **682 F.3d at 683 ("[T]he PLRA enforces a point repeatedly made by the Supreme Court in cases challenging prison conditions: prison officials have broad administrative and discretionary authority over the institutions they manage.") (internal quotation marks and citation omitted).**

The Seventh Circuit has described injunctions like the one sought here, where an injunction would require an affirmative act by the defendant, as a mandatory preliminary injunction. *Graham v. Med. Mut. of Ohio*, **130 F.3d 293, 295 (7th Cir. 1997).** Mandatory injunctions are "cautiously viewed and sparingly issued," since they require the court to command a defendant to take a particular action. *Id.* (*citing Jordan v. Wolke*, **593 F.2d**

772, 774 (7th Cir. 1978); and *W.A. Mack, Inc. v. Gen. Motors Corp.*, 260 F.2d 886, 890 (7th Cir. 1958)).

To properly assess the likelihood of eventual success on the merits, the Court must also take note of the controlling legal standards for the underlying claims in the litigation. The Religious Land Use and Institutionalized Persons Act ("RLUIPA"), 42 U.S.C. §2000cc-1(a) provides that:

> no government shall impose a substantial burden on the religious exercise of a person residing in or confined to an institution…even if the burden results from a rule of general applicability, unless the government demonstrates that imposition of the burden on that person—(1) is in furtherance of a compelling governmental interest; and (2) is the least restrictive means of furthering that compelling government interest.

Denial of only one aspect of religious practice, and observance of others does not avoid potential harm to an inmate. *See Knowles v. Pfister*, 829 F.3d 516, 518 (7th Cir. 2016) (finding that a Wiccan inmate demonstrated sufficient potential harm by his inability to wear a Wiccan pendant, even if he had other methods of practicing his religion available).

To establish a RLUIPA claim, a plaintiff bears the initial burden of showing that he seeks to engage in an exercise of religion, and 2) that the challenged practice substantially burdens that exercise of religion. *Koger v. Bryan,* 523 F.3d 789, 796 (7th Cir. 2008). Once plaintiff makes a prima facie case of these two elements, then the burden shifts to the defendants on all other elements. *Id.* RLUIPA bars inquiry into whether a particular belief or practice is central to a prisoner's religion, but it does not bar inquiry

into the sincerity of an individual's beliefs. *Id.* **at 797.** So, for example, the Seventh Circuit said, if the *sole* basis for a non-meat diet was based on concerns for bodily health, that would not be a religious reason for requiring a special diet. *Id.* In *Koger*, the Seventh Circuit noted that an individual's choice to "exercise" his religion in part by using a non-meat diet was permissible, even though the religion did not specifically require that as a form of "exercise." *Id.*

IV. **Analysis**

Here, the undersigned conducts a *de novo* review of the record, Magistrate Judge Sison's R&R, and Watford's objections. This case presents very nuanced issues. Although the undersigned agrees with Magistrate Judge Sison that the prospect of relief on a special diet claim related only to nutritional value may be low,[1] the undersigned concludes that Watford has presented enough information in his motions and objections to at least partially satisfy the burden of proof applicable to RLUIPA claims. It appears that Watford is making two distinct contentions. First, he contends that he is not being served the tray listed on the Lacto-Ovo-Veg menu on Wednesday mornings. Second, he contends that he is malnourished because he gets a tray with meat, and even if he got the right tray it would need more peanut butter to sustain him.

---

[1] In *Koger* the Seventh Circuit specifically stated that seeking a diet *solely* for nutritional reasons would not be acceptable. **523 F.3d at 797.**

The first claim, that he does not receive the Lacto-Ovo-Veg tray on Wednesday mornings would be a clear violation of his exercise of religion. Watford has sworn to the Court via his pleadings that he wishes to practice Islam, so he has established that he wishes to practice a religion. He has also alleged that the lack of the proper meal tray every morning burdens his ability to practice his religion specifically because he cannot eat the meat and gravy on the tray, and thus he is not nourishing his body as required by his religion. These two allegations meet the prima facie burden a plaintiff has under RLUIPA. The prison has not been called to respond on this issue, so they certainly have not met their burden. Whether or not their response ultimately dooms this claim, at this juncture it does not seem to the undersigned that it would constitute an undue burden to require Menard to supply Watford with a proper Lacto-Ovo-Veg tray on Wednesday mornings. It appears that other inmates receive this tray, and that if served the tray listed on the menus he tendered, Watford would be in compliance with the no-meat provision of his religion.

As to Watford's second contention, that the composition of the tray is not nutritionally sufficient because it does not have enough peanut butter or protein, this claim is more attenuated. The initial complaint and motions for injunctive relief did not make it very clear why Watford felt the nutritional issue hindered the exercise of his religion, but his objection shores up this gap because he alleges that he does not have enough energy to pray or study religious texts. This additional assertion nudges him

towards satisfying the burden of making out a prima facie case. However, it is not as easy for the Court to determine a quick and easy solution for this potential issue, and the Court also notes the nutritional supplement Watford received as of winter 2018. While it is easy to direct Menard to supply him with a tray on Wednesday mornings that they already prepare, it is significantly more burdensome to ask them to assess the nutritional composition of that tray, or to change it on a one-person basis. It is easy to imagine all inmates who receive that tray clamoring for the same accommodation, and then all inmates in the prison right behind them. Everyone likes peanut butter.

It is entirely possible that the nutritional composition of the diet trays offered in IDOC is something that should be periodically revisited. But it is debatable whether or not a RLUIPA claim is an appropriate vehicle to this ends. The Seventh Circuit commented on the delicate nature of this distinction in *Koger*. If a claim about nutrients is solely focused on personal health, it cannot pass under RLUIPA. If it has to do with the exercise of religion, even in a religion with no specified diet, RLUIPA is an appropriate vehicle for the claim. It is hard to say whether Watford's claim about nutritional deficiency in the Wednesday tray is really about his religious practice (having energy to practice) or whether it is more focused on his health in prison. So, unlike not receiving the right tray at all on a Wednesday (where his likelihood to succeed may be high), the tray having insufficient contents may or may not succeed. Given the more tenuous nature of the second claim, and the potential burden on the prison, the

undersigned finds it appropriate to deny this aspect of the request for injunctive relief. As Magistrate Judge Sison also astutely observed, Watford is receiving iron supplements, which may improve his health. The receipt of the supplements weighs against the likelihood of irreparable harm. This Order is not to be construed as binding commentary on the potential future merits of any claims in this case. It is merely a weighing of the limited facts presented with an eye towards the most reasonable and equitable injunctive relief. The case will benefit significantly as it proceeds through discovery and towards a more merits-oriented analysis of the issues presented.

### V. Conclusion

For the reasons set forth above, the Court **ADOPTS in PART** the proposed disposition to deny injunctive relief set forth in the Report and Recommendation (Doc. 42) as to the request for additional peanut butter and jelly packets. However, the Court **DENIES in PART** the R&R as it pertains to the provision of the proper Lacto-Ovo-Veg tray on Wednesday mornings. Menard is hereby **DIRECTED** to provide Watford with the **standard Lacto-Ovo-Veg tray every Wednesday morning for the duration of this litigation**. Documentation shall be kept by Menard to avoid future swearing contests about whether the tray was or was not provided.

**IT IS SO ORDERED.**

DATED: March 19, 2019

*s/ Michael J. Reagan*
Michael J. Reagan
Chief Judge
United States District Court