IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| MARLON L. WATFORD, #R15678, **Plaintiff,** v. HOWARD HARNER, *et al.*, **Defendants.** | Case No. 18-cv-01313-SPM |

# MEMORANDUM AND ORDER

**MCGLYNN, District Judge:**

This matter is before the Court on several motions filed by *pro se* Plaintiff Marlon Watford: Motion for Leave to File Amended Complaint, Motion to Compel Evidence, and Motion for Extension of Time. Also, before the Court is an Amended Motion for Leave to Substitute filed by Defendants.

### MOTION FOR LEAVE TO FILE AMENDED COMPLAINT

On August 10, 2020, the Court denied Watford's motion requesting additional time to file a motion for leave to amend the complaint, which was filed over a year past the deadline set by the Court. (Doc. 85). Despite the Court's Order, Watford has filed a Motion for Leave to File an Amended Complaint and motion requesting a hearing on the motion. (Docs. 86, 102). Because the Court has already denied Watford's request for more time to file an amended complaint, the Motion for Leave to File an Amended Complaint and the motion requesting a hearing are denied. To the extent that Watford is asking the Court to reconsider its previous ruling, the request is also denied. *See* FED. R. CIV. P. 54(b). Watford has not presented any reason for the Court to reconsider its order denying him additional time. In the Motion, he does not claim that the Court has made an error of law or of fact. *See Rothwell Cotton Co. v. Rosenthal & Co.*, 827 F.2d 246, 251 (7th Cir.

1987) ( motions to reconsider are "to correct manifest errors of law or fact or to present newly discovered evidence"). Rather, Watford repeats his earlier arguments that Defendants' delay in producing initial discovery prejudiced him and caused him to miss the deadline to amend. He also adds that Defendants implicitly agreed not to contest a motion to amend when they stated that "Plaintiff will suffer no prejudice if the Court grants Defendants' Motion" requesting additional time to complete discovery. (*See* Doc. 76). A motion for reconsideration is not appropriate for revisiting previously raised arguments or "arguing matters that could have been heard during the pendency of the previous motion." *Caisse Nationale de Credit Agricole v. CBI Indus., Inc.*, 90 F.3d 1264, 1270 (7th Cir. 1996). Therefore, a request to reconsider is denied.

The Court also denies the Motion to Strike filed by Defendants. (Doc. 87). Defendants argue that the Motion for Leave to File Amended Complaint should be stricken because Watford has ignored the Court's ruling and filed a Motion for Leave to File Amended Complaint in bad faith for the purpose of harassing Defendants. In light of the Court's denial of the Motion for Leave to File Amended Complaint, the additional action of striking the pleading is unnecessary. *See Heller Fin., Inc. v. Midwhey Powder Co., Inc.,* 883 F. 2d 1286, 1294 (7th Cir. 1989) (stating the general rule that "motions to strike are disfavored"). *See also Davis v. Ruby Foods, Inc.,* 269 F. 3d 818, 821 (7th Cir. 2001) (advising counsel "against striking extraneous matter unless its presence in the complaint is actually prejudicial to the defense").

Finally, the Court denies Watford's request for the Court to order Defendants to send him a complete copy of the Motion to Strike. (Doc. 102). Watford claims that the copy sent to him by Defendants is missing page 2. Defendants have notified the Court that they sent Watford another a copy of the Motion to Strike on November 12, 2020, and so, further Court action is not necessary.

## MOTION TO COMPEL

On March 19, 2020, the Court issued an order granting in part Watford's Motion to Compel

Evidence. (Docs. 69, 78). Watford has filed a second Motion to Compel Evidence arguing that Defendants did not comply with the Court's previous order in supplementing their responses to interrogatory #1 and interrogatory #7 and providing documents in response to document requests #2, #3, #4, and #5. (Doc. 88). Watford also asks the Court to compel Defendants to produce documents in response to additional production requests #7, #9, and #10. Watford claims that in attempt to resolve the discovery dispute he wrote letters to Defendants on May 9, 2020 regarding document request #10, on May 25, 2020 regarding document requests #2, #3, #7, and on June 29, 2020 regarding document requests #2, #4, #5, #9, and #10. (Doc. 88, pp. 9, 11, 13, 14, 18, 21, 23). Defendants have filed a motion asking the Court to strike the second Motion to Compel as untimely filed after the close of discovery. (Doc. 92). Defendants further claim they only received one discovery related letter from Watford on June 1, 2020,[1] which they responded to on June 22, 2020. (Doc. 88, p. 40; Doc. 92, p. 2). Watford then filed a motion asking the Court to set a hearing on the issue. (Doc. 100).

"District courts have broad discretion in matters relating to discovery[,]" *Patterson v. Avery Dennison Corp.,* 281 F. 3d 676, 681 (7th Cir. 2002), and there are no procedural rules placing a "prescribed time limit on the outside date for filing a motion to compel discovery." *In re Sulfuric Acid Antitrust Litigation,* 231 F.R.D. 331, 332 (N.D. Ill. 2005). While filing a motion to compel almost four months after receipt of the discovery is exceptionally long, both parties have contributed in preventing discovery from being timely completed. (*See* Docs. 73, 75, 79). Additionally, it does appear that Watford attempted to contact Defendants during that time to resolve the disputes. Therefore, in order to ensure that Defendants comply with the Court's previous order, the Court grants in part the second Motion to Compel. The Court will review

---

[1] Watford asks the Court to infer that the letter received by Defendants on June 1, 2020, was the letter sent on May 25, 2020. (Doc. 93, p. 3-4).

Watford's second Motion to Compel to the extent he is arguing that Defendants did not adequately respond to interrogatories #1 and #7 and produce documents #2, #3, #4, and #5, as directed by the Court. Because Watford has chosen to alert the Court of the deficiencies in the responses to document requests #7, #9, and #10 for the first time six months after the close of discovery, the request to compel the production of these documents are denied as untimely filed. Furthermore, the Court denies the Motion to Strike filed by Defendants and the motion requesting a hearing filed by Watford. (Docs. 92, 100).

*Interrogatory #1*

Watford previously asked Defendant Vandekerkhove, "Is it I.D.O.C./Menard serving size standard that one serving of peanut butter is one ounce, one point five ounces, or two ounces, etc?" (Doc. 88, p. 47). The Court directed Vandekerkhove to supplement his answer to include the recommended serving of peanut butter for a meal at Menard. (*See* Doc. 69, p. 3; Doc. 78, p. 3).

Following the Court's order, Defendant Vandekerkhove answers, "The serving size standard for one package of peanut butter is three quarters of an ounce. There is no recommended daily allowance serving of peanut butter for a meal at Menard. On the lacto-ovo-menu inmates are served one package of peanut butter for breakfast two days out the week. The package is 0.75 oz." (Doc. 88, p. 47).

Watford disagrees with Vandekerkhove's answer that there is no recommended daily allowance serving of peanut butter at Menard. He states that this answer is untrue because the IDOC Therapeutic Diet Manual provides that a serving size of peanut butter is two tablespoons. (Doc. 88, p. 4). In support of his motion, Watford cites to a document titled "How to use the Food Pyramid," which contains a list of food that will "assist in understanding the nutrient compositions and the suggested servings on a given day." (*Id.* at p. 27). The document states that a serving from the meat group is equivalent to 2 tablespoons of peanut butter. (*Id.*). Watford wants

Vandekerkhove to provide the "correct answer" that 1.5 ounces or two packages of peanut butter is the recommended serving size. (*Id.* at p. 25). As Watford has been advised, a disagreement with a defendant's answer is not "the proper subject of a motion to compel." (Doc. 78, p. 4) (citing *Hashim v. Ericksen*, No. 14-cv-1265, 2016 WL 6208532, at *1 (E.D. Wisc. 2016)). Therefore, the request to compel further response for interrogatory #1 is denied.

*Interrogatory #7*

Watford previously asked Defendant Meininger, "What is the protein count and overall nutrition facts for one serving of Tofu on the LACTO-OVO-VEG religious diet tray?" Meininger's original response was, "I do not know." (Doc. 78, p. 5). The Court directed Meininger to answer the interrogatory or, if he could not obtain the requested information necessary to fully respond, include in his answer a detailed explanation of his efforts to obtain the information and the reason his efforts were not successful.

Following the Court's order, Defendant Meininger answers, "I don't know. Per Court Order Doc. 78, although Defendant Meininger does not have this information, according to the dietary manager of Menard Correctional Center I am not sure what tofu is but the product is TVP. A serving of TVP calls for ½ cup which is more than 12 grams of protein. The serving at Menard is at least that much." (Doc. 88, p. 31).

The Court finds this answer incomplete. Although Watford mistakenly identified textured vegetable protein ("TVP") as tofu, this error should not have prevented Meininger from fully answering the interrogatory or Defense Counsel from contacting Watford for clarification. Meininger has not provided the protein count for one serving of TVP or the overall nutrition facts for TVP. He states that a serving of TVP is ½ cup and contains more than 12 grams of protein, and because "more than 12 grams" could be any number above 12, this response does not sufficiently answer Watford's interrogatory or explain why a more specific number or range could not be

identified. Meininger also has not explained why he, as a food supervisor and staff at Menard, was unable to obtain the nutritional information for TVP, as directed by the Court. Therefore, the Court orders Meininger to fully answer interrogatory #7. If Defendant Meininger cannot obtain the information necessary to fully respond, his must provide a detailed explanation of his efforts to obtain the information, and the reason his efforts were not successful.

*Document Request #2*

Watford previously requested a copy of any and all documentation depicting the weight, nutrition facts, and ingredient list of the individual packet of Lucky Peanut Butter, and Defendants were ordered by the Court to provide the documents requested.

Following the Court's order, Defendants responded by providing the nutritional information for a packet of Lucky Peanut Butter and referred Watford to Bates stamped document 001179, which shows that there are no nutritional facts shown on the packages of Lucky Peanut Butter. (Doc. 88, p. 35). After being contacted by Watford that he did not have document 001179, Defendants stated that the document was not sent in error and sent the document on June 22, 2020. (*Id.* at p. 39). Watford claims that the document that was sent is fraudulent because it does not contain a Bates stamped number. He also never received Bates stamped documents 001180-001187. Why Watford has received some but not all documents sent by Defendants is unclear, therefore, Defendants are directed to resend the following Bates stamped documents to Watford: 001179 and 001180-001187.

*Document Request #3*

Watford previously asked for all documentation setting the menu for 2017, 2018, and/or 2019, including menus, food served log sheets, kosher tray injunctive order, and the protocol for kosher trays. In response to this request, Defendants provided some documents but did not provide or address Watford's request for copies of the kosher log sheets. Defendants were directed to

Page 6 of 10

provide Watford copies of kosher tray food log sheets concerning food served for 2017, 2018, and 2019.

Following the Court's order, Defendants provided the following response, "Per Court Order Doc. 78, Defendants have located kosher food log sheets. The log sheets are extremely voluminous amounting to five (5) full size notebooks completely full with information regarding daily meal for the kosher diet. Plaintiff is on the lacto-ovo-veg diet and not the kosher diet. Therefore, Defendants object to this request as overbroad in time and scope, unduly burdensome, and not proportional to the needs of this case. *See* Fed. R. Civ. P. 26(b)." Later, in a letter to Watford, Defendants informed him that there were approximately 500 pages of kosher log sheets. He was advised that if he narrowed his request, then the objection to the document request would be reconsidered. Watford did not narrow his request. He argues that the request is relevant to his ongoing equal protection of the law claim. (Doc. 88, p. 12).

The Court finds that the request is not proportional to meet the needs of this case. Part of Watford's equal protection claim is that beginning in 2017, prison officials made various substitutions to his lacto-ovo-veg religious diet tray that were not made to other religious diet trays, including the vegan and kosher diet tray, resulting in inadequate nutrition and preventing him from discharging his religious duties. (Doc. 1, p. 26-30). While the kosher tray food log sheets may be relevant to this claim, it is not clear why three years' worth of log sheets would be necessary. Therefore, the Court modifies the request. Defendants are directed to provide Watford with the kosher food log sheets for March 22, 2017, the date Watford claims substitutions were first made to his religious diet tray, until June 22, 2018, when the Complaint was filed.

*Document Requests #4 and #5*

Watford previously requested copies of documentation reflecting nutrition facts, weight, and serving size for all five kosher trays, such as labels and package box side panels and the

nutrition facts of the salad served on the lacto-ovo-veg religious diet tray. Defendants have responded stating that there is no documentation of nutritional values for kosher trays and no documentation of nutritional value for salad served on the lacto-ovo-veg diet tray. (Doc. 88, p. 36-37). The Court cannot compel documents that do not exist, and so, the request is denied. *See Heartland Recreational Vehicles, LLC v. Forest River, Inc.,* No. 3:08-CV-00490, 2010 WL 3119487, at *8 (N.D. Ind. Aug. 5, 2010) ("District courts routinely deny motions to compel the production of documents when the non-moving party represents that such documents do not exist.") (collecting cases).

### AMENDED MOTION FOR LEAVE TO SUBSTITUTE

Defendants have filed an Amended Motion for Leave to Substitute requesting the Court to allow the substitution of Exhibit B, Declaration of Chaplain Harner, because the original declaration submitted with the Motion for Summary Judgment is unsigned. (Doc. 108). They also ask to substitute Exhibit E, a response to a request for production, with the declaration of Robert Vandekerkhove.[2] In response, Watford has filed a Motion to Object and Strike Amended Motion for Leave to Substitute. (Doc. 109) (also incorporating arguments from Doc. 101). He argues that the new declaration, Exhibit B, does not comply with federal law because it contains a "typewritten signature of his counsel" and was not personally signed by Harner. He also takes issue with the fact that other declarations submitted as exhibits to the Motion for Summary Judgment were signed electronically. Watford further argues that allowing Defendants to add the declaration of Vandekerkhove changes the evidence and would cause him prejudice because he would have to redraft his response.

The Court grants Defendants' Motion for Leave to Substitute and denies Watford's Motion

---

[2] In the original Motion for Leave to Substitute (Doc. 97), Defendants ask for the substitution of Exhibit D, rather than Exhibit E. Because an amended motion has been filed, the original Motion for Leave to Substitute is denied as moot.

to Object and Strike. First, motions to strike are disfavored and often "serve only to delay." *Heller,* 883 F. 2d at 1294. Second, there is no evidence that counsel, not the declarants, electronically signed the declarations filed by Defendants, and Watford has not cited to any authority "that would suggest an 'electronic signature'[on the part of the declarant] is insufficient." *See Joselyn v. Hydro Aluminum North America, Inc.,* No. 07-CV-392, 2009 WL 151160, at *1 (N.D. Ind. Jan. 22, 2009); *Black v. P.F. Chang's China Bistro, Inc.,* No. 16-cv-3958, 2017 WL 2080408, at *4 (N.D. Ill. May 15, 2017); *Magyar v. Saint Joseph Reg'l Med. Ctr.,* 544 F. 3d 766, 770 (7th Cir. 2008) (noting that "electronic signatures are regularly honored"). Finally, because Watford has not yet filed a response to the Motion for Summary Judgment and has asked for additional time to do so, the Court does not find that Watford would be prejudiced by allowing Vandekerkhove's declaration.

Accordingly, the Court grants Watford's Motion for Extension so he will have plenty of time to review the discovery obtained in response to this Order and the newly filed Exhibit E and file a response to the Motion for Summary Judgment. Watford's response is due by **March 8, 2020**.

## LETTER TO THE COURT

Watford has filed a letter informing the Court that Doc. 109 is incorrectly titled. (Doc. 110). Therefore, the Clerk of Court is directed to correct the docket text at Doc. 109 as follows: Motion to Strike 108 AMENDED MOTION FOR LEAVE TO SUBSITUTE re 95 Memorandum in Support of Motion.

## DISPOSITION

For the reasons provided, the Motion for Leave to File Amended Complaint filed by Watford (Doc. 86), the Motions to Strike filed by Defendants (Docs. 87, 92), the Motions for Leave to File Notice of Hearing filed by Watford (Docs. 100, 102), and the Motions to Object and Strike filed by Watford (Docs. 101, 109) are **DENIED**. The Motion for Leave to Substitute filed by

Defendants (Doc. 97) is **DENIED as moot**.

The second Motion to Compel Evidence filed by Watford (Doc. 88) is **GRANTED in part** and **DENIED in part**. By **January 28, 2021:**

- Defendant Meininger is **ORDERED** to fully answer interrogatory #7. If Defendant Meininger cannot obtain the information necessary to fully respond, his answer must include a detailed explanation of his efforts to obtain the information and the reason his efforts were not successful.

- Defendants are **ORDERED** to resend the following Bates stamped documents to Watford: 001179 and 001180-001187.

- Defendants are **ORDERED** to provide Watford with the kosher food log sheets for March 22, 2017 through June 22, 2018.

Defendants are further **DIRECTED** to file a Notice of Compliance when they have served Watford with the required discovery. Once Defendants have filed a Notice of Compliance, Watford shall have until **February 11, 2021,** to notify the Court whether he disputes the responses and documents produced. Any discovery motion filed after **February 11, 2021**, will be denied as untimely filed.

The Amended Motion for Leave to Substitute filed by Defendants (Doc. 108) is **GRANTED**. Exhibit B and E attached to Doc. 108 are deemed filed and substituted for Exhibits B and E attached to Doc. 95.

The Motion for Extension of Time filed by Watford (Doc. 111) is **GRANTED**. Watford shall file a response to the Motion for Summary Judgment by **March 8, 2021**.

**IT IS SO ORDERED.**

**DATED:   January 14, 2021**

                                                     *s/Stephen P. McGlynn*
                                                    **STEPHEN P. MCGLYNN**
                                                    **United States District Judge**