## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF ILLINOIS

MARLON L. WATFORD,

            **Plaintiff,**

v.

            **Case No. 18-cv-1313-SPM**

HOWARD HARNER, et al.

            **Defendant.**

## <u>MEMORANDUM AND ORDER</u>

**McGLYNN, District Judge:**

Pending before the Court is a Motion for Summary Judgment and supporting Memorandum of Law filed by Defendants, Kimberly Butler, Lloyd Hanna, Richard Harrington, Roger Holt, Roger Kern, Jacqueline Lashbrook, Theodore Meininger, Scott Opolka, Billy Rose, David Seals, Gustave Vandekerhove, Robert Delre, Howard Harner and Jim Winters (Docs. 147, 148). For the reason's set forth below, the Court **GRANTS** the Motion for Summary Judgment.

### RELEVANT PROCEDURAL HISTORY

This action arises out of a complaint filed on June 22, 2018 by Marlon L. Watford, ("Watford") an inmate at Menard Correctional Center ("Menard") (Doc. 1). Within the complaint, Watford sought compensatory and punitive damages, as well as injunctive relief (*Id*).

On July 16, 2018, following the preliminary review conducted of the complaint pursuant to 28 U.S.C. § 1915, the Court determined that Watford could proceed on the following three counts against the named defendants:

**Count 1** – Harner, Winters, Kerns, Opoka, Theo, Van Deckerhoff, Harrington, Butler, and Lashbrook have deprived Plaintiff of the Id-ul-Fitr feast, while providing meals to celebrate Christian feasts, burdening his sincerely held religious beliefs in violation of the First Amendment, Fourteenth Amendment, and/or RLUIPA;

**Count 2** – Harner, Theo, Winters, Van Deckerhoff, Lashbrook, Rose, Seals, and John Doe deprived Plaintiff of the opportunity to participate in the Ramadhan fast between June 1, 2017 through June 24, 2017, while not treating other similarly situated inmates in the same manner, in violation of the First Amendment, Fourteenth Amendment, and /or RLUIPA;

**Count 3** – Hanna, Winters, Kerns, Opoka, Holt, Van Deckerhoff, Theo, Jan Doe, and Lashbrook have substantially burdened Plaintiff's practice of his religion by making substitutions to his food tray in violation of the First Amendment, Fourteenth Amendment, and/or RLUIPA.
(Doc. 5, p. 4).

On July 16, 2018, Watford filed his motion for preliminary injunction (Doc. 6). On February 12, 2019 a Report and Recommendation was filed (Doc. 42), and on February 25, 2019, Watford filed his objections to the Report and Recommendation (Doc. 43). On March 19, 2019, the Court adopted in part and denied in part the proposed disposition to deny injunctive relief as set forth in the Report and Recommendation (Doc. 44). Specifically, the Court denied the request for additional peanut butter and jelly packets, but directed Menard to provide Watford with the standard Lacto-Ovo_veg tray for the duration of the litigation (*Id.*).

On October 16, 2018, a Trial Practice Schedule was entered with discovery due by 3/2/2020, dispositive motions due by 4/1/2020 (Doc. 22). At that time, the parties were also advised that dispositive motions re exhaustion of administrative remedies were due by 12/17/18 (*Id.*). Because of ongoing discovery issues, the deadline for filing of dispositive motions was extended to 9/10/2020 (Doc. 85).

On September 10, 2020, defendants requested an extension of time to file dispositive motions, and said motion was granted on 9/14/2020 extending the time for filing to 9/24/2020 (Doc. 90). On September 24, 2020, defendants filed their initial motion for summary judgment, along with supporting memorandum of law and notice of Rule 56 (Docs. 94-96). The initial response date was 10/29/2020 (Doc. 94); however, the response date was extended to 1/12/2021 (Doc. 106). Watford did not file a response to said motion; instead he continued to file discovery motions and sought to file an amended complaint.

On July 16, 2021, a hearing was held before the Court on Watford's motion to compel (Doc. 114), amended motion to compel (Doc. 115), and motion to amend (Doc. 117). At that time, the Court withdrew the outstanding motion for summary judgment as it had been on file for almost ten (10) months with no response due to Watford's contention of ongoing discovery issues (Doc. 136). Following the hearing, defendants were ordered to produce all food logs and nutritional values of the items that constituted the salad trays, along with a Bates Log of all items produced in discovery, and Watford was to advise of any deficiencies (Doc. 137). On August 31, 2021, defendants filed their notice regarding discovery (Doc. 142).

On October 4, 2021, an amended scheduling order was entered with discovery due by 11/1/2021, dispositive motions due by 11/15/2021, final pretrial conference on 2/24/2022 and jury trial scheduled to commence on 3/15/2022 (Doc. 143). On October 15, 2021, approximately forty-five (45) days after defendants filed their notice regarding

discovery on 8/31/21 and more than ten (10) days after the entry of the amended scheduling order, plaintiff filed a motion to lodge objection (Doc. 144)[1].

On November 15, 2021, defendants filed their motion for summary judgment, along with supporting memorandum of law and notice of filing pursuant to Rule 56 of the Federal Rules of Civil Procedure (Docs. 147 – 149). On November 24, 2021, the Court noted that any responses were due on or before December 27, 2022 (Doc. 152). On December 17, 2021, Watford filed a motion for extension of time, seeking 60 days to file his response as he was still gathering discovery and working on his own motion for summary judgment (Doc. 151). On December 20, 2021, the motion was granted in part and Watford was advised that any responses were due on or before January 31, 2022 (Doc. 157). However, the Court also noted that the "discovery and dispositive motions deadline have passed" and that no further extensions would be granted "absent extraordinary circumstances" because this matter was set for final pre-trial conference in February 2022 as well as jury trial on March 15 2022 (*Id.*).

On February 7, 2022, Watford's Motion in Opposition of Summary Judgment was received; however, it was "filed" as of January 31, 2022 because the E-file scanning machine was malfunctioning at Menard (Doc. 158). The document consisted of a 10-page motion as well as a section wherein Watford answered the "Undisputed Material Facts" asserted by defendants and his supporting memorandum that numbered 94 handwritten pages (*Id.*). Although Watford's document was clearly in excess of the local

---

[1] The Court is constrained to note that Watford is incarcerated at Menard, which is a scan facility, and page 1 of his Motion indicates that it was scanned at Menard on 10-15-21, which is the same date it was filed with the Court.

rules[2], this Court did not strike the opposition (Doc. 166). The Court was mindful of the upcoming settings and did not want to delay resolution of this matter.

## STATEMENT OF FACTS[3]

This Court has prepared its own Statement of Facts based upon the briefs provided by the parties herein, and which were supported by particular portions of the record, including exhibits, to support that it is material and undisputed in accordance with Rule 56(c)(1)(A) of the Federal Rules of Civil Procedure. This section is limited to those facts which would be admissible at trial and which are adequately supported and material to the issues in this case.

Watford has been incarcerated in the Illinois Department of Corrections since 2002, and he received a rule book, the orientation manual. Watford is currently incarcerated at Menard Correctional Center ("Menard") in Chester, IL.

Watford began participating in Ramadan at Menard in 2003. Ramadan is an obligatory practice of fasting from sun up to sun down for 30 days that normally ends in a 3-day feast. At Menard, inmates are given one feast meal for special religious days, such as Ramadan. Due to security reasons and lockdown, dietary can not always make a special meal[4]. Watford testified that he did not get a feast meal, but he did get his regular Lacto-Ovo-Veg tray at the end of Ramadan.

Watford knows that he has to be approved to participate in Ramadan at Menard. Watford was initially approved to participate in Ramadan in April 2017 and the fast

---

[2] Local Rule 7.1(d) provides that, "No brief shall be submitted which is longer than 20 double-spaced typewritten pages in 12 point font." SDIL – LR 7.1.
[3] In an effort to exclude immaterial, irrelevant and redundant facts, this Court has prepared its own Statement of Facts based upon the briefs provided by the parties herein.
[4] In 2014, Menard was on lockdown at the end of Ramadan, so the inmates were served baked chicken instead of fried chicken.

started on or about May 27, 2017. Plaintiff was away from Menard on a writ from April 19, 2017 until May 31, 2017. Upon his return to Menard, Watford did not get a Ramadan tray, even though he had previously been approved. The next day, Watford still did not get a Ramadan tray. Watford reached out to the dietary department but did not speak with Vandekerkove or Meininger. Correctional staff advised Watford that he was not on the list to participate in Ramadan.

Howard Harner was a chaplain at Menard from 2014 to October 12, 2018 and he approved inmates to be placed on Ramadan and to receive special trays. Harner approved Watford, but Watford was removed from the list when he was on writ and it was his responsibility to notify the chaplain that he was back so he could go back on the list. Watford contacted the chaplaincy department and was re-approved again on June 2, 2017 to receive the tray.

Watford wanted a diet that did not include Islamic unlawful meat. He was placed on a Lacto-Ovo vegetarian diet in 2007. Lacto-ovo is a form of a vegetarian diet that did not include meat, poultry, or fish, but did include fruits, grains, seeds, nuts, legumes, dairy and eggs. Lacto-ovo vegetarians can get quality protein from milk and eggs.

Between 2014 and 2018, Watford claims he was not receiving everything the Lacto-Ovo diet offers. He claims he was supposed to get peanut butter and dry cereal and claims he was given breakfast sausage on occasion with two slices of bread, butter and some gravy.

The menus for the lacto-ovo diet were prepared several years ago by Suzann Bailey, food nutritionist. The same menus are currently used, but the dietary department sometimes makes available substitutions depending on what it is able to

purchase, including eggs, cheese, milk and soy gravy, so long as nutritional requirements are met. Sometimes apples are substituted for bananas and sometimes salad is not served if it is not available.

Lloyd Hanna is the current Food Services Program Manager at Menard and has been with IDOC since March 1, 2007. Hanna is responsible for ordering all of the dietary food items and ensuring that all meals are served in a sanitary manner with proper nutrition. Hanna also oversees daily operations of food.

Jim Winters is a retired Food Service Supervisor III who was at Menard until his retirement in 2015. He was familiar with the trays but did not prepare the menus. The dietary manager at each facility is required to follow the menu as close as possible, but makes substitutions when necessary and tries to substitute with a similar product, like a fruit for a fruit or a vegetable for a vegetable.

Scott Opalka was a Food Services Supervisor II at Menard for a portion of time until his retirement in 2019. Gustave Vanderkerhove is the current Food Service Supervisor at Menard. Roger Holt is the Food Services Supervisor II at Pinckneyville and was at Menard from 2001 until December of 2017. Holt helped assemble the diet trays according to the menus, with available substitutions, but it was the dietary manager who was required to follow the master menu as closely as possible.

Jacqueline Lashbrook was the warden at Menard from January 2017 to February 1, 2019. She toured the galleries and occasionally spoke with inmates. She did not participate in religious observation approvals and was never directly involved in Watford's dietary tray preparation. She received one kite from him in 2017, but it

concerned a request to take various items on a writ and had nothing to do with dietary issues or his food tray.

Kimberly Butler was the warden at Menard before Lashbrook and was there from April 16, 2014 to September 30, 2016. As warden, she did not have direct involvement in special diet tray approval or religious observance approval. She has no recollection of any kites from Watford relating to Ramadan or dietary issues, but a log was kept of all kites to the warden. Richard Harrington was the warden at Menard before Butler from February 2013 to April 2014. Harrington has no recollection of any involvement with Watford.

David Seals was a correctional officer in 2016 and 2017. During meal distribution, dietary provided the trays and his job was to deliver the trays with another officer – one opened the chuck hole and the other handed the tray to the inmate. If an inmate complained, Seals directed them to dietary. Billy Rose has been employed by IDOC for 24 years and was a correctional sergeant from December 2016 to August 2018. He has been a supply supervisor II since September 2019.  He does not recall Watford. As a sergeant, he was primarily in the North Uppers. He rarely interacted with the inmates and said his only involvement with dietary trays was in supervising the delivery to the inmates. If an inmate complained he did not receive the proper tray, he would check the system to see what the inmate was supposed to receive. If the inmate was not listed to receive a religious diet, he would tell the inmate to write to the chaplain. Rose could not order a religious tray or special diet.

## LEGAL STANDARD

The court shall grant summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." *Spurling v. C & M Fine Pack, Inc.*, 739 F.3d 1055 (7th Cir. 2014) (quoting Fed. R. Civ. P. 56(a)). Once the moving party has set forth the basis for summary judgment, the burden then shifts to the nonmoving party who must go beyond mere allegations and offer specific facts showing that there is a genuine issue of fact for trial. Fed. R. Civ. P. 56(e); s*ee Celotex Corp. v. Catrett*, 477 U.S. 317 (1986). Stated another way, the nonmoving party must offer more than "[c]onclusory allegations, unsupported by specific facts," to establish a genuine issue of material fact. *Payne v. Pauley*, 337 F.3d 767 (7th Cir. 2003) *(*citing *Lujan v. Nat'l Wildlife Fed'n,* 497 U.S. 871 (1990)).

Summary judgment is proper against "a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Id.* at 322. The non-moving party "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.,* 475 U.S. 574, 586 (1986). "The mere existence of a scintilla of evidence in support of the [non-movant's] position will be insufficient; there must be evidence on which the jury could reasonably find for the [non-movant]." *Anderson v. Liberty Lobby,* 477 U.S. 242, 252 (1986).

While it is true that *pro se* pleadings are liberally construed; leniency toward a *pro se* litigant is circumscribed. *See Greer v. Bd. Of Educ.,* 267 F.3d 723, 727 (7th Cir. 2001) (courts are not "obliged ... to scour the record looking for factual disputes" to rescue a *pro se* litigant from losing summary judgment). *Pro se* status does not serve as a

license to ignore the Federal Rules of Civil Procedure or the Local Rules. *See Members v. Paige*, 140 F.3d 699, 702 (7th Cir. 1998) ("[procedural] rules apply to uncounseled litigants"); *Downs v. Westphal*, 78 F.3d 1252, 1257 (7th Cir. 1996) ("*pro se* litigants are not entitled to a general dispensation from the rules of procedure"). Furthermore, although severe, the Seventh Circuit has consistently upheld district judges' discretion to require strict compliance with local rules. *Coleman v. Goodwill Indus. of Se. Wis., Inc.*, 423 Fed.Appx. 642, 643 (7th Cir. 2011) ("Though courts are solicitous of *pro se* litigants, they may nonetheless require strict compliance with local rules); *Cady v. Sheahan*, 467 F.3d 1057, 1061 (7th Cir. 2006) ("[E]ven *pro se* litigants must follow rules of civil procedure.").

## APPLICABLE LAW

Following merit review, Watford was allowed to proceed on three separate counts, all of which alleged violations of the First Amendment, Fourteenth Amendment, and/or the Religious Land Use and Institutionalized Persons Act ("RLUIPA") (Doc. 5. P. 4). Defendants contend that they did not violate any of Watford's rights (Doc. 148). Defendants further assert that they cannot be liable under § 1983 without direct, alleged constitutional violations and that they are entitled to qualified immunity (*Id.*). Additionally, defendants contend that any claims prior to June 22, 2016 are barred by the applicable statute of limitations (*Id.*).

### I.    RLUIPA

The Religious Land Use and Institutionalized Persons Act ("RLUIPA") prohibits prison officials from imposing a substantial burden on an inmate's religious exercise, unless the government demonstrates that imposition of the burden on that person is the

least restrictive means of furthering a compelling governmental interest. 42 U.S.C. § 2000cc-1(a). *See also Grayson v. Schuler*, 666 F.3d 450, 451 (7th Cir. 2012). The relevant portion of RLUIPA provides in pertinent part:

> "No government shall impose a substantial burden on the religious exercise of a person residing in or confined to an institution, ... even if the burden results from a rule of general applicability, unless the government demonstrates that imposition of the burden on that person—
>
> > (1) is in furtherance of a compelling governmental interest; and
> >
> > (2) is the least restrictive means of furthering that compelling governmental interest. 42 U.S.C. § 2000cc–1(a).

In recent cases the United States Supreme Court has defined "substantial burden" as something that "seriously violates [one's] religious beliefs," regardless of whether alternative means of religious exercise are available. *Holt v. Hobbs*, 135 S. Ct. 853, 862 (2015) (quoting *Burwell v. Hobby Lobby Stores, Inc.*, 134 S. Ct. 2751, 2775 (2014)). The use of the term "seriously" provides little more guidance than "substantial burden," but the Seventh Circuit advises it means more than just a "modest" violation. *Schlemm v. Wall*, 784 F.3d 362, 365 (7th Cir. 2015). The Supreme Court has further clarified that the religious exercise includes "any exercise of religion, whether or not compelled by, or central to, a system of religious belief." *Holt*, 135 S. Ct. at 860 (quoting 42 U.S.C. § 2000cc–5(7)(A)). Still, plaintiff must show at least (1) a loss of benefits or (2) that the prison applied pressure to modify behavior. *Koger v. Bryan*, 523 F.3d 789, 799 (7th Cir. 2008) (holding that government conduct is substantially burdensome when it "put[s] substantial pressure on an adherent to modify his behavior and violate his beliefs") (internal citations and quotation marks omitted). If a prisoner satisfies the initial burden of demonstrating something more than "a modest violation,"

then the burden shifts to the government to demonstrate that the policy is the least restrictive means of furthering a compelling government interest. *Koger*, 523 F.3d at 796.

In the application of the "compelling government interest" standard, courts must afford "due deference to the experience and expertise of prison and jail administrators in establishing necessary regulations and procedures ... consistent with consideration of costs and limited resources." *Cutter v. Wilkinson*, 544 U.S. 709, 723 (2005). Hence, as is often true with claims of impingement on constitutional rights, district courts are left to apply a balancing test under RLUIPA.

## II.     First Amendment

Under the First Amendment, prisoners enjoy a right to the free exercise of their religion. *Vinning-El v. Evans*, 657 F.3d 591, 592-93 (7th Cir. 2011). However, a prison may impose restrictions on the exercise of religion that are reasonably related to the legitimate penological objectives of the state. *Tarpley v. Allen County, Ind.*, 312 F.3d 895, 898 (7th Cir. 2002) (citations omitted).

To establish a First Amendment violation, Watford must demonstrate that defendants "personally and unjustifiably placed a substantial burden on his religious practices." *Neely-Bey Tarik-El v. Conley*, 912 F.3d 989, 1003 (7th Cir. 2019) (*quoting Thompson v. Holm*, 809 F.3d 376, 379 (7th Cir. 2016)). A substantial burden is one that puts "substantial pressure on an adherent to modify his behavior and to violate his beliefs." *Thomas v. Review Bd.*, 450 U.S. 707, 718 (1981). In the prison context, such a burden is justified if it is reasonably related to a legitimate penological interest. *Thompson*, 809 F.3d at 380 (*citing Turner v. Safley*, 482 U.S. 78, 89–91 (1987)).

In determining whether an asserted justification is rationally related to a legitimate penological objective, courts consider: (1) whether there are alternative means of exercising the right that remain open to the inmate; (2) the impact an accommodation of the asserted right would have on guards and other inmates; and whether there are "obvious alternatives" to the restriction. *Ortiz v. Downey*, 561 F.3d 664, 669 (7th Cir. 2009); *Turner v. Safley,* 482 U.S. 78 (1987). Prisons also have a legitimate penological interest in maintaining security. *Tarpley,* 312 F.3d at 898; *Al-Alamin v. Gramley,* 926 F.2d 680, 686 (7th Cir. 1991). The inmate has the burden of disproving the validity of a challenged prison regulation. *Overton v. Bazzetta, 539 U.S. 126, 132 (2003).* As a general principle, federal courts afford deference to the decisions of prison administrators. *Turner, 482 U.S. at 85.* Indeed, to survive summary judgment, the opposing party has to submit evidence from which a jury could reasonably find that the defendants personally and unjustifiably placed a substantial burden on religious practices. *Thompson*, 809 F.3d at 379.

### III.   Fourteenth Amendment

The Fourteenth Amendment's Due Process Clause "provides heightened protection against government interference with certain fundamental rights and liberty interests", such as religious freedom. *Washington v. Glucksberg,* 521 U.S. 702, 720 (1997). The Equal Protection Clause of the Fourteenth Amendment also offers a basis for a distinct claim, which requires the State to treat all similarly situated people equally. See *City of Cleburne v. Cleburne Living Center,* 473 U.S. 432, 439 (1985).

It is important to note that that all prisoners do not have to receive identical treatment and resources. See *Cruz v. Beto,* 405 U.S. 319, 322 (1972). As a general matter,

a "prison administrative decision may give rise to an equal protection claim only if the plaintiff can establish that "state officials had purposefully and intentionally discriminated against him". *Meriweather v. Faulkner*, 821 F.2d 408, 415 n.7 (7th Cir. 1987). In other words, a particular group has to be singled out for disparate treatment. *Nabozny v. Podlesny,* 92 F.3d 446, 453 (7th Cir. 1996).

## ANALYSIS

Following merit review, Watford was allowed to proceed on the following three claims:

> **Count 1** – Harner, Winters, Kerns, Opoka, Theo [Meininger], Van Deckerhoff, Harrington, Butler, and Lashbrook have deprived Plaintiff of the Id-ul-Fitr feast, while providing meals to celebrate Christian feasts, burdening his sincerely held religious beliefs in violation of the First Amendment, Fourteenth Amendment, and/or RLUIPA;
>
> **Count 2** – Harner, Theo [Meininger], Winters, Van Deckerhoff, Lashbrook, Rose, Seals, and John Doe deprived Plaintiff of the opportunity to participate in the Ramadhan fast between June 1, 2017 through June 24, 2017, while not treating other similarly situated inmates in the same manner, in violation of the First Amendment, Fourteenth Amendment, and /or RLUIPA;
>
> **Count 3** – Hanna, Winters, Kerns, Opoka, Holt, Van Deckerhoff, Theo, Jan Doe, and Lashbrook have substantially burdened Plaintiff's practice of his religion by making substitutions to his food tray in violation of the First Amendment, Fourteenth Amendment, and/or RLUIPA.  (Doc. 5, p. 5).

## I.    CLAIMS

### Count 1:    Eid-Al-Fitr Feast

Count 1 of plaintiff's complaint alleges that he was deprived of his right to the Eid-Al-Fitr-Feast and that said deprivation burdened his religious beliefs (Doc. 5). Watford further claimed that meals were provided for Christian feasts, He claims he did not receive the feast meal in 2014, 2015, 2016 or 2017.

At Menard on Christmas, all inmates receive the "feast" meal of turkey and gravy. At the end of Ramadan, all inmates also receive a special meal, which usually includes fried chicken or another form of chicken and vegetables. However, inmates on special diets do not receive "feast meals".

Watford is a vegetarian and has been on the lacto-ovo-veg diet since 2007. While he contends that he did not receive a special feast meal, he concedes that he did receive his standard meal tray at the end of Ramadan. Because of his special dietary needs and restrictions, a feast meal containing chicken is in direct contravention to his lacto-ovo-veg diet. Watford has placed the personnel at Menard in a Catch-22 position. They are responsible for ensuring that his nutritional needs are met.

Menard is a maximum-security prison and the facility has articulated rational reasons for providing the same feast meal to all inmates. To provide individual meals would be an extreme burden on the staff and would hinder security concerns.

There is no question of fact that Watford was provided his meal pursuant to his dietary plan, and that absent his restrictions, he would have received the "feast" meal like all of the other inmates. As such, summary judgment is appropriate as to Count 1 of Watford's claims.

**Count 2: Ramadan**

Watford next contends that he was deprived of the opportunity to participate in the Ramadan fast from June 1, 2017 through June 24, 2017. It is uncontroverted that Watford was initially approved to participate in Ramadam in April 2017; however, he was then on writ from Menard until May 31, 2017, which was approximately 4 days after the beginning of Ramadan.

Upon his return to Menard, Watford did not automatically return to the Ramadan list. According to the Affidavit of Chaplain Howard Harner, if an inmate leaves the facility, he must request to be returned to the religious dietary list upon his returns (Doc. 148-2, p. 2). This information is provided to the inmates when they are first approved to participate in the Ramadan fast (*Id.*). When the Chaplaincy Department was finally alerted by Watford that he had returned to Menard, he was placed back on the Ramadan fast list on June 2, 2017[5] (*Id.*).

Federal courts have routinely held that "where a delay in providing an inmate with a religious diet is brief and caused by ordinary administrative delay, the inmate's religious rights are not violated." *Tapp v. Stanley,* 2008 WL 4934592, at 7 (W.D.N.Y. Nov. 17, 2008) (finding that defendant was entitled to summary judgment on plaintiff's First Amendment claim even when the plaintiff was denied kosher meals from April 4, 2004 to July 23, 2004); see, e.g., *Lambright v. Indiana*, 2020 WL 4451075, at 3 (N.D. Ind. Aug. 3, 2020) (holding that defendant was entitled to summary judgment on plaintiff's First Amendment claim even when the plaintiff experienced a sixty-two day delay in receiving a kosher diet); *Green v. Paramo*, 2018 WL 6062359, at 4 (S.D. Cal. Nov. 20, 2018) (dismissing plaintiff's First Amendment claim although the plaintiff experienced a five month delay in receiving approval for a kosher diet); *McCormack v. Myers*, 2007 WL 1704905, at 4-5 (D.S.C. June 12, 2007) (acknowledging that plaintiff was not given kosher meals for two and a half months, but plaintiff failed to demonstrate that the actions of the defendants violated any of his constitutional rights).

There are many cogs in the prison wheel. Even if the alleged non-receipt of fasting

---

[5] This Court notes that the original fast list was compiled more than one month before the start of Ramadan.

trays was sufficient to burden Watford's religious practices, nothing indicates that the non-conforming trays or the delay in accommodating Watford was caused by defendants and was due to anything other than an ordinary administrative delay. Watford makes numerous unsubstantiated and unsupported allegations, but there is no evidence that any alleged harm was substantial (22 days without fast meals), and that it was caused by anything other than ordinary administrative delay. Accordingly, Defendants' motion for summary judgment with respect to Count 2 is granted.

**Count 3: Substitutions to Food Trays**

Finally, Watford alleges that defendants burdened his practice of religion by making substitutions to his food tray. Watford has been on the Lacto-ovo-veg diet since 2007. His chosen diet was prepared by a dietician to provide inmates with nutritionally sound meals based upon the Lacto-ovo-veg diet plan. Watford was never provided anything that is in violation of his religious practices on the meal plan. Any substitutions are made based upon what is available at the prison in accordance with the Lacto-ovo-veg meal plan that include non-meat protein alternatives, which can include peanut butter, but which can also include egg, milk, cheese, and soy gravy.

Prisons have a duty to ensure that inmates receive adequate food. *Farmer v. Brennan*, 511 U.S., 825, 828 (1994). There is no evidence that Watford was not provided nutritionally sound meals or that any substitutions burdened his religious practices. Indeed, prison officials are limited in what they can obtain and from whom, and wherever possible substituted a fruit for a fruit and a vegetable for a vegetable. This Court is confused how an apple in place of a banana can be construed as a substantial burden. Furthermore, Watford received a lacto-ovo-veg tray, not a specific religious tray,

so how can an alleged peanut butter discrepancy impact one's religious practice. Finally, the Court previously directed Menard to provide Watford with the standard Lacto-Ovo-Veg tray every Wednesday morning for the duration of this litigation (Doc. 44). As such, summary judgment is granted as to Count 3 as Watford has not shown a question of fact that any substitutions made to his food trays have substantially burdened his religion.

## II.   Defenses

Although this Court has already determined that summary judgment is appropriate as to all three of Watford's claims, defendants have also raised three defenses in support of their arguments.

### 1.  § 1983 Liability

For a defendant to be held liable under section 1983, he must have been personally involved in the violation of the plaintiff's constitutional rights. *Mitchell v. Kallas*, 895 F.3d 492, 498 (7th Cir. 2018). A high-ranking prison official cannot be held liable under 42 U.S.C. § 1983 simply because he oversees operations within the prison or supervises other correctional staff. *Burks v. Raemisch*, 555 F.3d 592, 596 (7th Cir. 2009). A defendant will be deemed to have sufficient personal responsibility for a constitutional violation if the violation occurred "at a defendant's direction" or with his "knowledge or consent." *Mitchell v. Kallas*, 895 F.3d at 498.

As the undisputed material facts show, none of the wardens, Harrington, Butler, and Lashbrook, were directly involved with Watford and any of his alleged claims. Sergeant Rose and Officers Delre and Seals were also not directly involved in dietary matters, they merely delivered what they were given based upon who was on the list. Food supervisors Winters, Holt, Opalka, Meininger, and Vanderkerkhove, also lack

personal involvement. They were bound by the menus and used what was available to make appropriate substitutions. They prepared the food trays based upon the names upon their list. Furthermore, Winters retired in 2014, so cannot be liable for any alleged deprivations in 2015, 2016 and 2017. As for Chaplain Harner, he did his job and placed Watford on the Ramadan fast list and then got him back on the list on June 2, 2017. Harner has no responsibilities in the kitchen with respect to food preparation or dietary issues.

### 2.  Statute of Limitations

To determine the proper statute of limitations for section 1983 actions, the federal court adopts the forum state's statute of limitations for personal injury claims. *See Ashafa v. City of Chicago,* 146 F.3d 459, 461 (7th Cir.1998) (Pursuant to 735 ILCS 5/13-202, the state of limitations for Section 1983 cases filed in federal court is two years.).

Watford filed his claim on June 22, 2018 (Doc. 1). Within his complaint, he claims he was deprived of the feast at the conclusion of Ramadan in 2014, 2015 and 2016. Although is appears as if the claims relating to the alleged feast deprivation in 2014 and 2015 are beyond the applicable statute of limitations, it is irrelevant because Watford received his meal according to his Lacto-Ovo-Veg diet, and any alleged deprivation of the "feast" meal was due to his dietary restrictions and not due to any religious beliefs.

### 3.  Qualified Immunity

"Under the doctrine of qualified immunity, government officials are liable for civil damages ... only when their conduct violated clearly established statutory or constitutional rights of which a reasonable person would have known." *Balsewicz v.*

*Pawlyk*, 963 F.3d 650, 656 (7th Cir. 2020) (citations and internal quotation marks omitted). The doctrine "protects all but the plainly incompetent or those who knowingly violate the law." *Campbell v. Kallas*, 936 F.3d 536, 546 (7th Cir. 2019) (citation omitted).

In evaluating a qualified immunity defense at summary judgment, the court considers (1) whether the facts, taken in the light most favorable to the plaintiff, show that the official violated a clearly established right; and (2) whether the plaintiff has come forward with sufficient evidence to create a genuine dispute of fact as to whether the official in fact committed those acts. *Balsewicz,* 963 F.3d at 656. "To be clearly established, a right must be sufficiently clear that every reasonable official would have understood that what he is doing violates that right." *Ashcroft v. al-Kidd*, 563 U.S. 731, 741 (2011); *see also Volkman v. Ryker*, 736 F.3d 1084, 1090 (7th Cir. 2013) (cautioning that rights should not be defined in a highly general fashion).

While there are constitutional rights and freedoms, none are established in this case. Watford was not deprived of the feast meal, he was provided with his special dietary meal pursuant to his Lacto-Ovo diet. He was also initially placed on the Ramadan fast list in April 2017 and then was re-approved to return to the list on June 2, 2017. Finally, the substitutions to the Lacto-Ovo tray did not substantially burden his religious practice. The substitutions were based upon availability and were to comply with nutritious requirements.

## CONCLUSION

For the reasons set forth above, the Court **GRANTS** the Motion for Summary Judgment filed by Defendants, Kimberly Butler, Lloyd Hanna, Richard Harrington, Roger Holt, Roger Kern, Jacqueline Lashbrook, Theodore Meininger, Scott Opolka, Billy

Rose, David Seals, Gustave Vandekerhove, Robert Delre, Howard Harner and Jim Winters. This action is **DISMISSED with prejudice** and the Clerk of Court is **DIRECTED** to close this case and enter judgment accordingly.  As such, all pending court dates are cancelled and terminated.

**IT IS SO ORDERED.**

**DATED:** <u>**February 25, 2022**</u>

<u>/s/ Stephen P. McGlynn</u>
**STEPHEN P. McGLYNN**
**U.S. District Judge**